IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THOMAS ANDERSON,

     Plaintiff,

     v.

PAR ELECTRICAL CONTRACTORS, INC.,

     Defendant.

Case No. 16-2739

MEMORANDUM & ORDER

This matter comes before the court upon plaintiff Thomas Anderson's Motion for Summary Judgment (Doc. 58) and Motion in Limine (Doc. 60) and defendant's Motion for Leave to File Sur-Reply (Doc. 73) and Motion for Summary Judgment (Doc. 65).

The pretrial order sets out the parties' claims and is generally the operative pleading at this point in the litigation. However, the magistrate judge also allowed plaintiff to file an amended complaint after the pretrial order was entered, for the purpose of dismissing a claim. The remaining claims are Count I for negligence and Count II for wrongful termination-retaliation. Defendant's motion for summary judgment seeks judgment as a matter of law on the negligence claim and plaintiff's motion seeks summary judgment on the retaliation claim.

## I.     Facts

The following facts are either stipulated in the final pretrial order, now the operative pleading in this case, or were undisputed in the parties' summary judgment briefing:

On August 18, 2014, plaintiff was employed as a lineman by defendant Par Electrical Contractors, Inc., working on a Google Fiber project. Shawn Stewart was plaintiff's immediate supervisor, and Mr. Stewart reported to Eric Younghans. The project required plaintiff to replace old

-1-

utility poles, moving any overhead lines and equipment on old poles to new poles.  Defendant had a safety rule called the Minimal Approach Distance (MAD).  It required linemen to wear rubber gloves and sleeves when working within five feet of an energized source.

Plaintiff was working on a new and old pole that were about two feet apart.  He went up in a lift bucket along with an apprentice, Ron Mayden.  They removed lines and "then went back to the old pole to score a plastic conduit that housed three power lines coming from a nearby church."  (Doc. 53, at 2.)  The scoring was done with a circular power saw.  To use it, plaintiff removed rubber gloves and sleeves and put on leather gloves.  After plaintiff cut the right side of the conduit, he handed the saw to Mr. Mayden and held two of the three lines.  While he was holding the lines, a current passed through his hands, burning his hands and arms.  Plaintiff was treated for nine days at the University of Kansas Hospital.  He had to have skin grafts from his thigh to his arms.

Mr. Stewart, the foreman on the project, was present when the accident took place.  After the accident, but before the project was completed, defendant took photographs of the site.  On August 19, 2014, Dale Querrey, defendant's president, fired plaintiff.  Sometime before plaintiff was fired, defendant fired Mr. Stewart for his failure to adequately supervise plaintiff.  On August 27, 2014, defendant wrote plaintiff a letter telling him that his employment was terminated for violating a safety rule and denying his workers compensation claim for the same reason.  Plaintiff's claim is covered by the Kansas Workers Compensation Act ("KWCA"), and on September 3, 2014, he filed a workers compensation claim.  Defendant denied that the claim was compensable because it claims that plaintiff willfully and/or recklessly violated the MAD safety rule by failing to wear rubber gloves and sleeves within five feet of an energized source.

## II.    Legal Standards

### a.  Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party moving for summary judgment has the burden to show "the lack of a genuine issue of material fact." *Ascend Media Prof'l Servs., LLC v. Eaton Hall Corp.*, 531 F. Supp. 2d 1288, 1295 (D. Kan. 2008) (citing *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))). Once the moving party meets this initial burden, the burden then shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))).

The nonmovant may not rest on his pleadings or "rely on ignorance of the facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 259 (1986)); *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Instead, the nonmovant is required to set forth specific facts, by referencing affidavits, deposition transcripts, or exhibits, from which a rational trier of fact could find for him. Fed R. Civ. P. 56(c)(1); *see also Ascend Media*, 531 F. Supp. 2d at 1295 (citing *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)). Summary judgment is not a "disfavored procedural shortcut"—it is an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### b. Retaliation Claim

Kansas is an at-will employment state, meaning "that in the absence of a contract, express or implied, between an employee and his employer covering the duration of employment, the employment is terminable at the will of either party." *Johnston v. Farmers All. Mut. Ins. Co.*, 545 P.2d 312, 315 (Kan. 1976). But Kansas case law recognizes exceptions to the at-will employment doctrine "when an employee is fired in contravention of a recognized state public policy." *Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1, 4 (Kan. 2011). These exceptions are: "(1) filing a claim under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq*; (2) whistleblowing; (3) filing a claim under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 (2006) *et seq*; and (4) exercising a public employee's First Amendment right to free speech on an issue of public concern." *Id.* (citing *Anco Constr. Co. v. Freeman*, 693 P.2d 1183 (Kan. 1985) (workers compensation); *Palmer v. Brown*, 752 P.2d 685 (Kan. 1988) (whistleblowing); *Hysten v. Burlington N. Santa Fe Ry. Co.*, 108 P.3d 437 (Kan. 2004) (FELA); *Larson v. Ruskowitz*, 850 P.2d 253 (Kan. 1993) (First Amendment).

In deciding whether a workers compensation retaliation claim can survive summary judgment, the court applies the *McDonnell Douglas* burden-shifting framework. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). The *McDonnell Douglas* burden-shifting framework first requires plaintiff to establish a prima facie case. If the plaintiff does so, the burden shifts to defendant to identify a "non-retaliatory reason for the discharge." *Id.* (quoting *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1116 (10th Cir. 2001)). Then, the burden shifts back to plaintiff to provide evidence that the employment termination was pretext for impermissible retaliation. *Id.* (citing *Rebarchek*, 35 P.3d at 898).

> [T]he elements for a prima facie claim for retaliatory discharge for filing a workers compensation claim are: (1) The plaintiff filed a claim for workers compensation benefits or sustained an injury for which he or she might assert a future claim for such benefits; (2) the employer had knowledge of the plaintiff's workers compensation claim injury; (3) the employer terminated the plaintiff's employment; and (4) a causal connection existed between the protected activity or injury and the termination.

*Campbell*, 255 P.3d at 8 (citing *Rebarchek v. Farmers Co-op. Elevator & Mercantile Ass'n*, 35 P.3d 892, 899 (Kan. 2001)).

### c. Exclusive Remedy Doctrine

Kansas law prohibits employees from recovering twice from an employer for injuries covered by workers compensation. *Cuiksa v. Hallmark Hall of Fame Prods., Inc.*, 252 F. Supp. 2d 1166, 1170 (D. Kan. 2003). The KWCA provides that "[e]xcept as provided in the workers compensation act, no employer . . . shall be liable for any injury, whether by accident, repetitive trauma, or occupational disease, for which compensation is recoverable under the workers compensation act . . . ." Kan.Stat.Ann. § 44-501b(d). Kansas case law explains the implications of this provision. "[A]n employer's liability . . . is limited exclusively to recovery under the Workers Compensation Act. As such, where the injury and the employer-employee relationship fall within the scope of the Act, the exclusive remedy provision . . . precludes an employee from maintaining a civil action against the employer." *Dillard v. Strecker*, 877 P.2d 371, 374 (Kan. 1994) (citing *Tomlinson v. Owens-Corning Fiberglas Corp.*, 770 P.2d 833 (1989)).

"The exclusive remedy provision protects both employers and employees. Employees are guaranteed a form of recovery against their employer; and employers are protected against paying for the employee's damages twice—once through workers' compensation and again through a civil action for damages." *Cuiksa*, 252 F. Supp. 2d at 1170–71. "The provisions of the Act are to be liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances." *Id.* at 1171 (quoting *Zehring v. Wickham*, 658 P.2d 1004, 1008 (Kan. 1983)).

### III.    Defendant Is Entitled to Summary Judgment On Count I

Defendant claims that it is entitled to summary judgment on the negligence claim—Count I—because plaintiff's exclusive remedy is his workers compensation claim.  Plaintiff filed a claim with the Kansas Division of Workers Compensation and was awarded benefits on July 6, 2017.  Defendant appealed and the appeals board affirmed the award of benefits in January 2018.  Defendant appealed that decision to the Kansas Court of Appeals.

The parties do not contest that the parties had an employer-employee relationship.  The issue then, is whether plaintiff's injury is one for which compensation is recoverable under the KWCA.  The court finds that it is.  Plaintiff's argument for surviving summary judgment on Count I seems to be based on a claim that defendant asserted an affirmative defense in the workers compensation proceeding that plaintiff's injury did not arise during the course and scope of plaintiff's employment.  In the workers compensation proceedings, defendant apparently argued that plaintiff's failure to follow safety rules should excuse defendant from liability.  Defendant explains that it agrees that plaintiff's injury occurred during the course and scope of his employment for purposes of coverage by the KWCA.

Unlike many workers compensation cases, the parties are not disputing that an employer-employee relationship existed between them, or that defendant qualifies as an employer under the KWCA, or that plaintiff was doing work that would normally fall within his job description.  And defendant notes that in the pretrial order, the parties stipulated that plaintiff's claim is covered by the KWCA.  (Doc. 53, at 3.)  The KWCA applies.

Plaintiff next argues that even if his injury arose during the course and scope of his employment, this court must wait to find out whether the Kansas Court of Appeals affirms the appeals board's decision that plaintiff's injuries are compensable.  The court disagrees.

Kansas case law states that "a workman . . . cannot maintain a common law action for damages founded upon negligence against a party from whom he could have recovered compensation under the Act." *Woods v. Cessna Aircraft Co.*, 553 P.2d 900, 903 (Kan. 1976).

Plaintiff has been awarded compensation, and even if the appellate process reverses that award, plaintiff does not have the right to then sue defendant for negligence. The negligence claim based on failure to provide a safe work place is covered by the KWCA, making plaintiff's workers compensation claim his exclusive remedy. Plaintiff is not guaranteed a recovery—the issue is not whether plaintiff, as an individual, ultimately receives compensation. The issue is whether the injury he alleges is compensable under the KWCA. It is, and defendant's motion is therefore granted and judgment is entered in defendant's favor on Count I.

### IV.    Plaintiff Is Not Entitled to Summary Judgment on Count II

For summary judgment purposes, defendant does not dispute that plaintiff establishes a prima facie case of retaliation. The burden therefore shifts to defendant to identify a non-retaliatory reason for firing plaintiff.

*Non-retaliatory Reasons for Termination*

Defendant claims that it fired plaintiff because he violated established work and safety rules—specifically the MAD, which requires linemen to wear rubber gloves and sleeves when working within five feet of an energized source. Defendant has shown that there is a genuine issue of material fact whether plaintiff was violating safety requirements the day he was injured. Cameron Scott, defendant's Superintendent, testified that he believed plaintiff was within five feet of an energy source and knew that he was violating a safety rule. (Doc. 67-6, at 5.) Mr. Scott based this opinion on his personal observations of the scene the day of the accident as well as on pictures taken that day. (*Id.*)

Defendant provided deposition testimony from Mr. Scott, Eric Younghans, Amanda Fischer, and documentary evidence including the Event Investigation Report, Termination Letter and Preliminary Event Investigation Report to support its position that plaintiff was fired for violating work and safety rules.  Mr. Scott testified that he was told to terminate plaintiff's employment because he committed a safety violation.  (*Id.* at 4.)  Mr. Younghans, defendant's supervisor in Kansas City, stated that it was his understanding that plaintiff was fired "because of the incident and how it occurred and how unnecessary and easily it could have been prevented . . . ." (Doc. 67-2, at 7.)  Ms. Fischer stated that plaintiff was terminated for "Violation of safety rules and policy, egregious." (Doc. 67-23, at 3.)

The preliminary report noted a safety incident as the event type.  (Doc. 67-22, at 1.)  It described the safety violations that occurred and noted that the incident was avoidable by wearing rubber gloves and sleeves as required.  (*Id.* at 2.)  It recommended that plaintiff's employment be terminated. (*Id.* at 3.)    Plaintiff's notice of termination letter, dated August 27, 2014, states that he was fired for violation of company safety policies.  (Doc. 67-17, at 1.)

Defendant has identified non-retaliatory reasons for firing plaintiff that are supported by record evidence.  The burden therefore shifts back to plaintiff to show that these non-retaliatory reasons are pretextual.

*Pretext*

Plaintiff argues that defendant "had economic reasons to terminate the Plaintiff unrelated to the MAD." (Doc. 71, at 11.)  Plaintiff states "Even if a jury could find a violation of the MAD as a reason to terminate the Plaintiff, the Court must look as to the **primary** reason to terminate." (*Id.* at 12 (emphasis in the original.))  But the burden has shifted back to plaintiff to show that there are no genuine issues of material fact and that plaintiff is entitled to judgment as a matter of law.  Plaintiff has

essentially admitted that a reasonable trier of fact could find that the reason for the termination of plaintiff's employment was his violation of safety and work rules.

Plaintiff argues that defendant was more motivated by economic considerations than by potential safety violations to fire plaintiff and that plaintiff's employment termination was decided before any investigation was conducted. But all plaintiff has done is submit evidence that defendant's stated reasons may be pretextual. There are genuine issues of material fact about the scope of defendants' investigation, when exactly the decision to fire plaintiff occurred, and what the decision-maker took into account when making his decision. Especially viewing the facts in the light most favorable to defendant, a reasonable trier of fact could decide to believe defendant's version of the facts. For this reason, plaintiff's motion for summary judgment is denied.

Defendant filed a motion to file a sur-reply. Sur-replies are not contemplated by D. Kan. Rule 7.1(c); they are rare, and only allowed with leave of court. *King v. Knoll*, 399 F. Supp. 2d 1169, 1174 (D. Kan. 2005). The court did not find a sur-reply necessary for resolving the issues in this case. It was not considered and the motion is denied.

### V.      **Legal Standard for *Daubert* Motions**

Plaintiff also moves to exclude or limit testimony by defendant's employees at trial. Specifically, plaintiff wants the court to prohibit defendant's employees from testifying about (1) the distance between the closest energized source and plaintiff's location at the time of the accident; and (2) the source of the electrical current that injured plaintiff. Defendant responds that it plans to offer only lay witness testimony under Fed. R. Evid. 701.

Rule 701 provides that:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not

based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"Rule 701 does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1213 (10th Cir. 2011) (quoting *Randolph v. Colectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)).  Lay witnesses may offer "observations [that] are common enough and require . . . a limited amount of expertise, if any." *Id.* (citing *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995).

## VI.    Discussion—*Daubert*

Defendant plans to offer six witnesses' testimony—Scott, Smith, Stevens, Mullins, Preston, and Younghans.  Defendant says that their testimony will be based on "their observations in viewing the scene of plaintiff's accident in light of their experience, the statements made by, taken from or reviewed in the normal course of their employment . . . and their personal observations and perceptions in the course of and participation in the investigation."  (Doc. 64, at 11.)  Defendant says they will also testify about their personal knowledge of defendant's safety rules and safety materials, their experience with defendant in the industry, and their observations about this matter.

Specifically, defendant notes that these witnesses took statements from individuals who were present at the time of plaintiff's accident; that some were themselves at the scene "immediately following the incident" and could make observations about the location and physical state of the items that were present there.  (*Id.* at 13.)  As mentioned above, there is a genuine issue of material fact about when defendant's investigation began and what the investigation entailed.  The court does not have the specific testimony defendant will offer before it, but from the parties' briefing, the testimony is based on witness perception, would be helpful to the trier of fact to understand the facts in issue, and would not be based on scientific, technical, or other specialized knowledge.

Defendant's response concedes that it did not make a "final conclusion about where the electrical current that shocked plaintiff started." (*Id.* at 15.) Defendant does not intend to offer testimony that conclusively establishes the source of the current, but rather testimony about employees' investigation into what the potential energized sources were. Plaintiff has not proven that the testimony defendant proposes would be inappropriate under Rule 701 and is therefore denied. However, the motion is denied without prejudice, subject to contemporaneous objection at trial, should defendant's witnesses begin to testify about matters that require special skill, expertise, or knowledge, beyond the realm of common experience. Plaintiff will have the opportunity to cross-examine defense witnesses to point out any weaknesses in either the perceptions or opinions offered.

**IT IS THEREFORE ORDERED** that plaintiff's Motion for Summary Judgment (Doc. 58) is denied.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment (Doc. 65) is granted.

**IT IS FURTHER ORDERED** that defendant's Motion for Leave to File Sur-Reply (Doc. 73) is denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion in Limine (Doc. 60) is denied without prejudice, subject to contemporaneous objection at trial.

Dated June 4, 2018, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**